FILED IN
CLERK'S OFFICE

'04 APR 14 PM 1 10

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE LAKE SUPERIOR/CIRCUIT COURT |
| | ) | SITTING IN CROWN POINT, INDIANA |
| COUNTY OF LAKE, SS: | ) | |
| | ) | |
| MICHIANA DIARY PROCESSORS LLC | ) | |
| Plaintiff | ) | |
| | ) | |
| V. | ) | CAUSE NO: 45C010404PL00085 |
| | ) | |
| STAR BEVERAGE, INC. and | ) | |
| ROGER MOHLMAN | ) | |
| Defendants | ) | CERTIFIED MAIL |
| | | POST MARKED 04-13-04 |

## COMPLAINT

Comes now, by counsel, and for its Complaint alleges and says:

**FACTS COMMON TO ALL COUNTS:**

1. Michiana Diary Processors LLC (Michiana) is an Indiana Limited Liability Corporation in good standing with its main corporate office in Lake County, Indiana.

2. Star Beverage, Inc. (Star) is a corporation that did business in, and had operations in, Lake County Indiana during all relevant times.

3. Roger Mohlman (Mohlman) is the President of Star, its largest shareholder, and operates Star as his own business as opposed to a corporation.

4. Mohlman maintains such control over Star and operates it in such a fashion as to make the fact that Star is a corporation legally meaningless and Mohlman is personally liable for the contractual and tortuous conduct of Star.

5. On June 13, 2004, Star and Mohlman entered into a Contract with Michiana which is attached hereto as Exhibit "A", incorporated herein by reference.

6. Exhibit "A" is a true and accurate copy of the Contract between the parties and accurately sets forth the parties rights and obligations under the agreement of the parties.

7. Exhibit "A" was prepared by Star and Mohlman.

8. Under the terms of said Contract, Star and Mohlman were to purchase from Michiana a certain amount of a specific product.

9. The duration of the Contract is ten (10) years.

10. As a direct and proximate result of the representations made by Star and Mohlman, both in his representative position and individually, Michiana invested in and spent significant sums of money to purchase and/or modify equipment that could only be used for the production under this Contract.

11. Along with other misrepresentations, Star and Mohlman specifically represented their intention to purchase the product pursuant to this Contract, market the product, and engage in a business plan that would be mutually beneficial to the parties.

12. Michiana reasonably relied on those representations.

13. Star and Mohlman knew when they made those representations they were false.

14. Star and Mohlman further breached this Contract by refusing to pay for or accept product from Michiana.

15. All product produced by Michiana was of a workman like quality and met the contractual requirements.

16. Michiana has met all of its contractual requirements.

17. Michiana has made demand on Star and Mohlman to perform under this Contract and they have refused to do so.

18. Under the terms of the contract Star and Mohlman were to purchase twenty-six thousand ($26,000) dollars of product each week for ten (10) years with automatic renewals.

19. Pursuant to the Contract Michiana has lost more than thirteen million five hundred thousand ($13,500,000) dollars.

20. Further, Michiana has been forced to retain counsel, and incur attorney fees and costs.

21. The conduct of Star and Mohlman was intentional and intended to harm Michiana.

22. Star and Mohlman intentionally breached the contract with Michiana in an effort to do Michiana harm.

## COUNT I BREACH OF CONTRACT

23. Plaintiff incorporates by reference herein the material allegations contained in paragraphs 1 through 22.

24. Defendants' conduct constitutes breach of contract.

25. As a direct and proximate result of Defendants' conduct Plaintiff has suffered damages.

Wherefore, Plaintiff prays for judgment and pre-judgment interest against Defendants jointly and severally, and for all other just and proper relief in the premises.

## COUNT II INTENTIONAL BREACH OF CONTRACT

26. Plaintiff incorporates by reference herein the material allegations contained in paragraphs 1 through 25.

27. Defendants' conduct constitutes intentional breach of contract.

28. As a direct and proximate result of Defendants' conduct Plaintiff has suffered damages.

Wherefore, Plaintiff prays for judgment and pre-judgment interest against Defendants jointly and severally, attorney fees and costs, punitive damages, and for all other just and proper relief in the premises.

### COUNT III FRAUDULENT INDUCEMENT

29. Plaintiff incorporates by reference herein the material allegations contained in paragraphs 1 through 28.

30. Defendants' conduct constitutes intentional breach of contract.

31. As a direct and proximate result of Defendants' conduct Plaintiff has suffered damages.

Wherefore, Plaintiff prays for judgment and pre-judgment interest against Defendants jointly and severally, attorney fees and costs, punitive damages, and for all other just and proper relief in the premises.

_____
Michael W. Back, attorney for Plaintiff
Attorney #3676-45
One Professional Center
Suite 204
Crown Point, IN 46307
(219) 661-2995
(219) 662-7269 (FAX)

EXHIBIT A

## PACKAGING AGREEMENT

This Packaging Agreement is made this 13 day of June, 2003 by and between ALL STAR BEVERAGE, INC., a Nevada corporation ("STAR"), having its principal place of business at 4560 S. Decatur Blvd., Suite 204, Las Vegas, Nevada 89103, and MICHIANA DAIRY PROCESSORS, LLC, an Indiana Limited Liability Corporation("MDP"), having its principal place of business at 9223 Broadway Suite E. Merrillville, Indiana, by which the parties, in consideration of the premises, representations and warranties, covenants, and agreements contained herein (the mutuality, independence, adequacy and sufficiency of which hereby are acknowledged), hereby agree as follows;

### 1. AUTHORIZATION

STAR hereby authorizes MDP to manufacture and package STAR's beverages (the "Product"), and MDP accepts such work. With MDP's agreement, STAR may change, add to, or delete from the various Product ordered and the formulas with respect thereto. All manufacturing and packing are to be done in accordance with the Quality Assurance Manual (the "Manual") that will be provided. The Manual is made a part of this Agreement by reference thereto, shall at all times be and remain the property of STAR, and may be amended by STAR in writing from time to time. MDP shall acquire no right, title, or interest in the Manual or its contents by virtue of MDP's right to process and use it during the term of this Agreement.

### 2. CASE COST

STAR will purchase finished product from MDP at the cost detailed on Schedule I attached hereto, which may be changed from time to time as the parties shall agree in writing based upon the terms of this Agreement as set forth below. Payment terms are net (3) days from invoice date by Wire. Invoicing will be done at time of production.

STAR will provide flavor concentrates to MDP at no cost to MDP. STAR shall provide all items specific to the STAR product line (bottles (pouches), labels, closures and shipping cases) to MDP at no cost to MDP. Labels must conform to MDP labeling and packaging equipment, to be provided by Star and be approved by MDP's Operations Manager prior to start-up of all production. MDP will provide water and all required materials that are currently in use by MDP. MDP will label, fill, pack, code, palletize and stretch wrap pallets and products at costs specified in Schedule I. MDP's current suppliers and manufacturing standards will be utilized.

STAR will allow MDP to utilize its vendors and pricing for all packaging materials and ingredients. The parties agree that STAR will be charged (as set forth on Schedule I) for such materials and ingredients at such vendors delivered pricing or at MDP's vendors delivered pricing, whichever is less. In any event, all vendors, materials, and ingredients must be approved by STAR.

Any documented raw material price change will be passed through to STAR.

MDP shall blend, bottle (pouch), cap, code, package, and palletize processed beverages in accordance with generally accepted manufacturing procedures.

1

The Product will be palletized on 40 x 48 GMA pallets. MDP will sell pallets to STAR at cost per pallet or even exchange at time of production.

### 3.   REPORTING

MDP shall forward to STAR via fax transmission or electronic equivalent in a timely basis complete and accurate activity reports, shipping logs, quality control reports, and such other reports as reasonably requested. Included would be a physical count of all raw and packaging material and finished goods on hand after the close of business at each month end. Timely basis is defined for purposes of this paragraph as within five (5) working days of the event requiring a specific report.

STAR shall advise MDP on a quarterly basis of its anticipated production requirements. Such projection shall be furnished to MDP not less than ten (10) days prior to the commencement of each quarter, and shall indicate what production is anticipated for each and/or package.

STAR shall furnish MDP a production order for each week's production requirements not less than ten (10) working days in advance specifying the quantities required of each flavor. In no event shall MDP be required to produce less than 30,000 cases of an individual flavor, nor more than 91,700 cases (of all flavors) in a given week.

### 4.   DEFECTIVE PRODUCT

If any product produced by MDP is found to be defective (including failing to meet specifications of STAR), contaminated or not consumable for any reason that is due to gross negligence of MDP (other than if such defect is due to (i) contaminated raw material provided by STAR or (ii) compliance by MDP with STAR specifications), MDP shall remedy the cause immediately and produce replacement Product, at its own expense, within ten (10) days from the date STAR notifies MDP of such problem.

STAR will pay the applicable cost for Product that is defective if such defect is due to contaminated raw materials provided by STAR or compliance by MDP with STAR specifications.

### 5.   STORAGE

MDP shall store all raw material on a just in time basis up to 14,400 cases of finished Product at no charge. Any finished Product in excess of this limit or any inventory stored more than five (5) days shall be stored at a cost of $2.50 per pallet per week, or at MDP's discretions, moved into outside storage at STAR's expense. MDP will rotate all inventories on a FIFO basis.

### 6.   EQUIPMENT

MDP and STAR both acknowledge and agree that pursuant to this Agreement STAR is installing certain equipment at MDP's facility located at PLANT. The equipment to be installed is more fully described in Exhibit A attached hereto. Nothing in this Agreement shall confer any rights, title or interest in the equipment to MDP. And MDP acknowledges that STAR is and shall

remain the sole owner of said equipment and MDP shall not take any action of any nature which may infringe or call into question STAR'S ownership of said equipment.

MDP and STAR further acknowledge that at the termination of this Agreement, whether by expiration or breach, STAR has the right to remove said equipment from the facility and cannot claim a lien against the equipment or retain the equipment for any reason whatsoever.

7. **WARRANTY**

In addition to all other warranties expressed or implied by law, MDP warrants that the Product shall meet all of STAR's specifications as outlined in the Manual, be free from defects of workmanship and materials, and be wholesome, merchantable, and fit for the human consumption at the time of delivery to STAR's carrier(s).

8. **INSURANCE**

MDP shall, at its expense, arrange, and maintain insurance covering comprehensive general commercial liability and casualty insurance, including blanket contractual liability, personal injury, and products liability coverage specific to products manufactured by MDP for STAR with limits of not less that $2,000,000 per occurrence. Such Insurance shall be written on an occurrence-basis policy with an insurance company with a current Best rating of "A" or better.

STAR shall, at its expense, arrange and maintain insurance covering comprehensive general commercial liability and casualty insurance, including blanket contractual liability, personal injury, and products liability coverage specific to products manufactured by MDP for STAR with limits of not less that $1,000,000 per occurrence. Such insurance shall be written on an occurrence-basis policy with an insurance company with a current Best rating of "A" or better.

9. **INSPECTION BY STAR**

STAR shall have the right, through one or more representatives, to enter MDP's plant and storage facilities, during normal production hours, observe the operations, inventory, raw and finished goods, and inspect Product and take or be furnished a reasonable number of samples of Product, which will be shipped at STAR's expense and paid for by STAR at cost.

10. **PROPRIETARY AND CONFIDENTIAL INFORMATION**

MDP acknowledges that during its relationship with STAR, MDP may have disclosed to it or have access to certain confidential and proprietary information of STAR ("Confidential Information") including, but not limited to, present and prospective customers, suppliers, types of service and products, marketing plans, technical information, trademarks, special customer requirements, methods of distribution, marketing information and other information. MDP shall keep confidential such Confidential Information and not disclose to anyone, other than its employees who have a need to know, such Confidential Information or terms of this Agreement.

MDP agrees not to use Confidential Information for its own account, for the account of others, or in any way in competition with STAR in manufacturing and/or marketing the Product. In addition, MDP agrees not to copy, duplicate or in any way record any Confidential Information disclosed to it under the terms of this Agreement.

3

STAR acknowledges that MDP currently manufactures products, substantially similar to STAR's, under MDP's labels and for other clients of MDP.

MDP's obligation of confidence and non-use hereunder shall be effective for the term of this Agreement plus one (1) year, provided however, that MDP should have no obligation of confidence with respect to:

(a) Any information, which MDP reasonably demonstrates, was within its possession in tangible form prior to the date of this Agreement.

(b) Any information, which MDP reasonably demonstrates, was independently developed by or for it or without reference to any of the Confidential Information disclosed under this Agreement.

(c) Any information, which MDP reasonably demonstrates, was independently developed by it or for it from non-confidential sources and without reference to any of the Confidential Information of STAR disclosed under this Agreement; or

(d) Any information, which MDP reasonably demonstrates, has become generally known in the trade or public prior to or subsequent to STAR's disclosure hereunder through no fault or action on the part of the

Upon termination of this Agreement or at such time as any portion of the Confidential Information provided to MDP or obtained during the term of this Agreement is no longer reasonably required by MDP, MDP shall furnish STAR with written notice specifying that, to the best of its knowledge, Confidential Information provided to MDP under this Agreement has been returned or destroyed as follows:

(a) All printed documents and copies thereof, including any drawings, or any other written documents or tangible things regarding the Product shall be returned to STAR; and

(b) The originals, prototypes, models, examples, or any likeness of the Product shall be returned to STAR.

## 11. MUTUAL INDEMNIFICATION

STAR shall indemnify and hold MDP harmless from and against any and all actions, suits, proceedings, claims (including claims for property damage, bodily injury, emotional distress and death), demands, losses, liabilities, damages and expenses (including without limitation, attorneys' fees and sums reasonably expended in investigation and settlement of litigation, pending or threatened) resulting from contaminated raw materials furnished by STAR to MDP, MDP's compliance with STAR standards, specifications or other negligent acts or omissions by STAR.

MDP shall indemnify and hold STAR harmless from and against any and all actions, suits, proceedings, claims (including claims for property damage, bodily injury, emotional distress and death), demands, losses, liabilities, damages and expenses (including without limitation,

attorneys' fees and sums reasonably expended in investigation and settlement of litigation, pending or threatened) arising out of or in connection with any warranty of product by MDP, any negligent act or omissions by MDP, and any breach by MDP of its representations, warranties, covenants and agreements contained in this Agreement.

## 12. TERMS AND CONDITIONS

Unless sooner terminated as hereinafter provided, this Agreement shall be effective from the date hereof and shall continue for a term of ten (10) years and shall thereafter automatically renew and continue for successive terms of five (5) years unless MDP shall notify the other party, in writing, of its intent not to renew this Agreement at least three (3) months prior to the expiration of the then-current term (or renewal term) hereof, which notice may be with or without cause. In the event of a renewal term, the terms of Section 2, Case Cost, will be specifically renegotiated since they are time specific in their current form.

This Agreement may be terminated at any time by either party upon written notice after a breach of any provision of the Agreement by the other party (other than a breach described in the following paragraph) if such breach has not been cured within sixty (60) days after written notice thereof has been given by the non-breaching party to the breaching party.

This Agreement may be terminated automatically by either party, effective as of the date that MDP or STAR (i) becomes insolvent, (ii) makes any assignment or arrangement for the benefit of its creditors, (iii) becomes subject to any federal or state receivership, reorganization insolvency, liquidation or bankruptcy case or proceeding, voluntary or involuntary, or any other marshaling of its assets, (iv) becomes subject to attachment, execution or seizure of all or substantially all of its assets, (v) is liquidated or dissolved or its articles of incorporation expire or are revoked, (vi) ceases or voluntarily abandons its business, or (vii) takes any corporate action to authorize any of the actions set forth in clauses (i) through and including (vi) above, whether or not such date occurs prior to actual notice being received by the non defaulting party.

In the event STAR or MDP is acquired, is a non surviving party in a merger, or transfers substantially all of its assets, this Agreement shall not be terminated and STAR or MDP agrees to take all actions necessary to ensure that the transferee or surviving company is bound by the provisions of this Agreement.

5

### 13. INDEPENDENT CONTRACTORS

Nothing contained herein shall be deemed or construed to create an employer/employee, principal/agent, joint venture, partnership, or fiduciary relationship between the parties. Each party shall be responsible for all costs, expenses, taxes, and liabilities arising from its obligations under this Agreement. Neither party shall have authority to enter into any contracts or commitments in the name or on behalf of the other party or to bind the other party in any way. Neither party shall be liable for the debts, accounts, obligations or other liabilities of the other or of its agents, employees or independent contractors. MDP is not authorized to make any warranties on behalf of STAR. STAR is not authorized to make any warranties on behalf of MDP.

### 14. ENTIRE AGREEMENT: AMENDMENT

This Agreement and the Exhibits and Schedules attached hereto constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all prior oral or written agreements and understandings, if any. This Agreement may not be amended or modified except as permitted herein or by a written agreement signed by the parties hereto.

### 15. GOVERNING LAW

In the event of litigation arising under this Agreement, the parties hereby agree that Indiana law shall apply to this Agreement. The parties further agree that state courts of competent jurisdiction within the State of Indiana shall be the exclusive forum to hear disputes arising under this Agreement, and that Lake County, Indiana shall be the exclusive venue for such disputes. The parties hereby expressly waive any and all rights to contest the jurisdiction and venue provisions above, and hereby agree and consent that the above law, venue, and jurisdiction provisions shall apply to any and all disputes arising from or under this Agreement including, but not limited to, any breach of contract, warranty or similar claims that may arise in connection with any Order hereunder.

### 16. ATTORNEY'S FEES

Except as otherwise provided herein, if a party shall commence any action or proceeding against another party in order to enforce the provisions of this Agreement or to recover damages as a result of the alleged breach of any of the provisions of this Agreement, the prevailing party shall be entitled to recover all reasonable costs in connection therewith, including reasonable attorneys' fees.

6

### 13. INDEPENDENT CONTRACTORS

Nothing contained herein shall be deemed or construed to create an employer/employee, principal/agent, joint venture, partnership, or fiduciary relationship between the parties. Each party shall be responsible for all costs, expenses, taxes, and liabilities arising from its obligations under this Agreement. Neither party shall have authority to enter into any contracts or commitments in the name or on behalf of the other party or to bind the other party in any way. Neither party shall be liable for the debts, accounts, obligations or other liabilities of the other or of its agents, employees or independent contractors. MDP is not authorized to make any warranties on behalf of STAR. STAR is not authorized to make any warranties on behalf of MDP.

### 14. ENTIRE AGREEMENT; AMENDMENT

This Agreement and the Exhibits and Schedules attached hereto constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all prior oral or written agreements and understandings, if any. This Agreement may not be amended or modified except as permitted herein or by a written agreement signed by the parties hereto.

### 15. GOVERNING LAW

In the event of litigation arising under this Agreement, the parties hereby agree that Indiana law shall apply to this Agreement. The parties further agree that state courts of competent jurisdiction within the State of Indiana shall be the exclusive forum to hear disputes arising under this Agreement, and that Lake County, Indiana shall be the exclusive venue for such disputes. The parties hereby expressly waive any and all rights to contest the jurisdiction and venue provisions above, and hereby agree and consent that the above law, venue, and jurisdiction provisions shall apply to any and all disputes arising from or under this Agreement including, but not limited to, any breach of contract, warranty or similar claims that may arise in connection with any Order hereunder.

### 16. ATTORNEY'S FEES

Except as otherwise provided herein, if a party shall commence any action or proceeding against another party in order to enforce the provisions of this Agreement or to recover damages as a result of the alleged breach of any of the provisions of this Agreement, the prevailing party shall be entitled to recover all reasonable costs in connection therewith, including reasonable attorneys' fees.

05/18/04  13:19 FAX 310 788 3399                                                     ☒027

Jun 13 03 12:44p                                        7027·   037            p.9

THIS AGREEMENT IS EXECUTED by the duly authorized officers of the parties as of the date set forth above.

all STAR BEVERAGE, INC.,                    Michiana Dairy Processors, LLC,
a Nevada corporation                        an Indiana Limited Liability Corporation

By: _____                 By: _____

Printed Name: Roger Mohlman                 Printed Name: Neil W. Fribley

Its: President                              Its: Member

PACKAGING AGREEMENT
SCHEDULE I

1. STAR to supply at their cost:

   A. Custom Pouches
   B. Labels
   C. Concentrate
   D. Closures
   E. Shipping Cases

   Losses greater that .5% on bottles and 2% on labels will be billed back to MDP.

2. MDP to supply at cost + 2% loss shrinkage:

   A. Water
   B. HFCS – 55
   C. Sodium Benzoate
   D. Potassium Sorbate
   E. Citric Acid
   F. Ascorbic Acid
   G. Closures
   H. Generic Re-shipper (brown)

   All materials cost will be passed on to STAR at time of increase to MDP.

3. Processing Fee:

   A processing fee of $.025 per pouch will be billed to charged to and paid by Star.

4. Pack Fee:

   A. Water - A pack fee of $0.70 per case of 24 will be added to 2 & 3 above.

   B. Flavored Drink - A pack fee of $0.50 per case of 24 will be added to 2 & 3 above for first 6 truckloads per calendar month and $1.00 per case thereafter.

5. Quantity Requirement:

   MDP shall process and Star shall purchase no less than an average of 900,000 pouches of product per week for the term of the contract.

**PACKAGING AGREEMENT**
**EXHIBIT A**

## EQUIPMENT